Lynn A. Toops*
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com

*Attorney for Plaintiffs and the Proposed Class*

*Admitted *pro hac vice*

Additional counsel listed on signature page

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| JORDAN ARRIAZOLA and CODY BAKER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MANAGEMENT & TRAINING CORP.,<br><br>Defendant. | **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Case No. 1:24-cv-00164-RJS-DAO<br><br>Assigned Judge: Hon. Robert J. Shelby<br><br>Referred Magistrate Judge: Hon. Daphne A. Oberg |

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 1

    I. Defendant lays off Plaintiffs and Settlement Class Members at the Facility.................. 1

    II. Plaintiffs file suit. ....................................................................................................... 2

    III. The Settlement Agreement provides swift and effective relief to the Settlement Class. 3

LEGAL STANDARD ....................................................................................................... 6

ARGUMENT ................................................................................................................... 6

    I. The Court will likely be able to approve the proposed Settlement Agreement. .............. 6

        A. The Rule 23(e)(2) factors favor approval................................................................ 7

        B. The Tennille factors favor approval. ...................................................................... 9

    II. The Court will likely be able to certify the proposed Settlement Class for purposes of
        settlement................................................................................................................. 12

        A. Numerosity is satisfied. ........................................................................................ 12

        B. Commonality is satisfied. ..................................................................................... 12

        C. Typicality is satisfied. .......................................................................................... 13

        D. Adequacy is satisfied. .......................................................................................... 13

        E. Predominance is satisfied...................................................................................... 14

        F. Superiority is satisfied. ......................................................................................... 14

    III. The Court should appoint Plaintiffs' Counsel as interim Class Counsel. ................... 16

    IV. The Court should approve the Notice Plan. .............................................................. 16

    V. The Court should set a reasonable schedule for exclusion, objection, and final
        approval .................................................................................................................. 17

CONCLUSION................................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Cotte v. CVI SGP Acquisition Tr.*,
    2023 WL 1472428 (D. Utah Feb. 2, 2023) ................................................................... *passim*

*Fager v. CenturyLink Commc'ns, LLC*,
    854 F.3d 1167 (10th Cir. 2016) ......................................................................................16

*Gross v. Hale-Halsell Co.*,
    554 F.3d 870 (10th Cir. 2009) ........................................................................................10

*Gunderson v. Alta Devices, Inc.*,
    2021 WL 4461569 (N.D. Cal. Sept. 29, 2021) ...............................................................14

*Lawrence v. First Fin. Inv. Fund V, LLC*,
    336 F.R.D. 366 (D. Utah 2020) .......................................................................12, 13, 14, 15

*Lawrence v. First Fin. Inv. Fund V, LLC*,
    2021 WL 3809083 (D. Utah Aug. 26, 2021) .......................................................... *passim*

*Morrison v. Clear Mgmt. Sols.*,
    2019 WL 122905 (D. Utah Jan. 7, 2019) .......................................................................15

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
    923 F.3d 779 (10th Cir. 2019) ........................................................................................14

*Phillips Petrol. Co. v. Shutts*,
    472 U.S. 797 (1985) .......................................................................................................16

*Ross v. Convergent Outsourcing, Inc.*,
    323 F.R.D. 656 (D. Colo. 2018) ......................................................................................6

*Tennille v. Western Union Co.*,
    785 F.3d 422 (10th Cir. 2015) ...............................................................................8, 9, 11

**Statutes**

29 U.S.C. § 2102(a) ..............................................................................................................2

29 U.S.C. § 2102(b) ..........................................................................................................2, 10

29 U.S.C. § 2104(a) ...........................................................................................................2, 4

29 U.S.C. § 3174(a) ..............................................................................................................2

**Regulations**

20 C.F.R. § 639.9 ................................................................................................................10

**Rules**

Fed. R. Civ. P. 23(a) ..........................................................................................................12

Fed. R. Civ. P. 23(b) ..............................................................................................12, 14, 15

Fed. R. Civ. P. 23(c) ....................................................................................................16, 17

Fed. R. Civ. P. 23(e) ................................................................................................. *passim*

Fed. R. Civ. P. 23(g) ..........................................................................................................16

Fed. R. Civ. P. 23 (f) ..........................................................................................................11

In this putative class action arising under the Worker Adjustment and Retraining Notification or "WARN" Act, 29 U.S.C. §§ 2101–2109, Plaintiffs move the Court to preliminarily approve the proposed settlement embodied in the Parties' attached Settlement Agreement.[1] The Settlement Agreement is the result of hard-fought, arms'-length negotiations between experienced counsel, facilitated by a neutral third-party mediator, after initial discovery. The Settlement Agreement provides substantial monetary relief for the benefit of the proposed Settlement Class with minimal expense and delay. Defendant Management & Training Corporation will pay $500,000 into a non-reversionary common fund, representing a significant proportion of damages. Settlement Class Members will not have to file claims to receive distributions from the Settlement Fund; checks will be mailed automatically upon final approval. The Settlement Agreement represents an excellent recovery, particularly in light of the continued litigation risks and delays faced by Plaintiffs and Settlement Class Members. The Settlement Agreement satisfies all Tenth Circuit criteria for preliminary approval and class certification. The Court should direct notice to the Settlement Class in accordance with the Settlement Agreement and schedule a final fairness hearing.

## BACKGROUND

### I.    Defendant lays off Plaintiffs and Settlement Class Members at the Facility.

The facts summarized here are set forth in the Complaint, ECF No. 1, the Settlement Agreement's recitals, Settlement Agreement ¶¶ A through S, and Defendant's document productions. *See* Toops Decl. ¶¶ 2–8. Defendant operated a detention Facility called the Giles W.

---

[1] Attached to this motion as Exhibit A is the Declaration of Lynn A. Toops. The exhibits to the Toops Declaration are as follows: Ex. A-1, Settlement Agreement; Ex. A-2, Proposed Summary Notice; Ex. A-3, Proposed Detailed Notice; Ex. A-4, Proposed Preliminary Approval Order; Ex. A-5, Proposed Final Approval Order. All otherwise undefined capitalized terms have the same meaning set forth in the Settlement Agreement, ¶¶ 1–34 ("Definitions"). Defendant does not oppose the motion. *See* Settlement Agreement ¶ 75.

Dalby Correctional Facility in Post, Garza County, Texas. Defendant's major client at the Facility was Tarrant County, Texas. In late July 2024, Tarrant County notified Defendant that it would be cancelling the parties' contract. Defendant sought a replacement for Tarrant County's business but did not obtain one. On August 30, Defendant formally notified its employees at the Facility in writing, including Plaintiffs, that it would cease operations at the Facility on September 30 and the employees would be laid off. On September 30, Defendant ceased operations at the Facility and laid off most of its employees working there, including Plaintiffs.

## II.    Plaintiffs file suit.

On October 2, Plaintiffs filed this Action, alleging that Defendant's August 30 notice to its employees at the Facility violated the WARN Act. The Act requires covered employers to provide 60 days' notice of any "plant closing" or "mass layoff" to "affected employees," as those terms are defined in the Act. *See* 29 U.S.C. 2102(a)(1). Notice must also be given "to the State or entity designated by the State to carry out rapid response activities under [29 U.S.C. § 3174(a)(2)(A)]," as well as to "the chief elected official of the local government within which such closing or layoff is to occur." *Id.* § 2102(a)(2). If the employer does not comply, "aggrieved employee[s]," as defined in the Act, may bring suit for back pay and benefits for each day the employer violated the Act. *Id.* § 2104(a)(1). The statute also provides for affirmative defenses of avoidance, *see id.* § 2102(b), and mitigation. *See id.* § 2104(a)(4). Plaintiffs seek damages to the fullest extent allowed by the Act on Plaintiffs' behalf and on behalf of a putative class of all other employees at the Facility whom Defendant laid off on September 30, as well as reasonable attorneys' fees.

On October 25, Defendant answered the Complaint. Defendant filed a corrected answer on October 28. Defendant's answers deny all liability to Plaintiffs and the putative class; deny that the Action may be maintained as a class action; raise numerous affirmative defenses to liability, including the statutory unforeseeable business circumstances and faltering company defenses; and

raise statutory defenses in mitigation of any liability. On November 15, the Parties' Counsel conducted a telephonic conference under Rule 26(f) and agreed on a proposed discovery plan. On November 27, in accordance with the Court's October 7 Order to Propose Schedule, the Parties filed a Stipulated Motion for Scheduling Order. On December 2, the Court entered a Scheduling Order and a Discovery Management Order. On December 10, Plaintiffs served their First Set of Interrogatories and First Set of Requests for Production on Defendant. On January 23, 2025, Defendant timely served responses to Plaintiffs' discovery requests and produced 1,108 pages of documents. On the basis of Defendant's productions, Plaintiffs calculated Plaintiffs' and Settlement Class Members' estimated damages.

On February 4, the Parties' Counsel attended a mediation hosted over Zoom before Karin S. Hobbs of Hobbs Mediation, 466 East 500 South, Suite 200, Salt Lake City, UT 84111. The February 4 mediation was conducted at arms' length and in good faith, and lasted more than six hours. Through the February 4 mediation, the Parties reached an agreement in principle to settle the Action, and the Parties' Counsel executed the Term Sheet.

On February 10, the Parties filed a Notice of Settlement and Joint Motion to Stay, pending finalization of the Settlement Agreement. On February 11, the Court entered an order staying the Action until March 27. The Settlement Agreement was fully executed on March 8. With Defendant's consent, on March 11 Plaintiffs retained Verita Global (formerly KCC LLC, Gilardi & Co., and RicePoint Administration Inc.) to serve as the Settlement Administrator.

## III.    The Settlement Agreement provides swift and effective relief to the Settlement Class.

If approved, the Settlement Agreement will resolve the claims of the Settlement Class, which is defined as "the 192 employees of Defendant who were laid off on September 30, 2024, as the result of the Facility's closure, and not later rehired by Defendant." Settlement Agreement ¶ 28. For the benefit of the Settlement Class, Defendant will pay $500,000 into an escrow account

managed by the Settlement Administrator. *Id.* ¶¶ 31, 39–41. No part of the Settlement Fund will revert to Defendant. *Id.* ¶ 42. The Settlement Fund will pay for Plaintiffs' and Settlement Class Members' damages; costs of notice and administration; and any fees, costs, and service awards the Court may order. *Id.* ¶¶ 13, 44–46.

Settlement Class Members do not need to submit a claim form or take any other action to receive a distribution from the Settlement Fund. Rather, no later than 30 days after the Settlement Agreement's Effective Date, the Settlement Administrator will mail each Settlement Class Member a check in the amount of the Member's share of the Net Settlement Fund according to the Allocation Plan, less withheld Employment Taxes. *Id.* ¶ 44. The checks will be valid for 180 days. If more than 5 percent of funds remain in the Net Settlement Fund 181 days after the last check was issued, the Settlement Administrator will conduct a second round of distributions to Settlement Class Members who deposited, endorsed, or negotiated valid checks. *Id.* ¶ 45. Any remaining funds will be distributed to a charitable organization as a *cy pres* payment, with the Court's approval. *Id.* ¶ 46.

The Allocation Plan is simple and directly tied to the WARN Act's damages scheme. *See* 29 U.S.C. § 2104(a)(1); Toops Decl. Ex. A-2, at 3–4. Each Settlement Class Member will be entitled to 29 days' back pay (calculated according to the Member's daily wage rate), one day per alleged WARN Act violation, divided by the total back pay owed to the entire Settlement Class for 29 days, multiplied by the Net Settlement Fund. Toops Decl. Ex. A-2, at 3–4

In exchange for this relief, Plaintiffs will extend a general release to Defendant of "any claim, liability, right, demand, or cause of action, of every kind and description, that Plaintiffs have or may have against Defendant, but exclud[ing] any claim that may not be released by agreement." Settlement Agreement ¶ 12; *see id.* ¶¶ 50–51. Plaintiffs will also assume confidentiality and

nondisparagement obligations. *Id.* ¶¶ 92–93. Settlement Class Members, by contrast, will more narrowly release only "any claim, liability, right, demand, or cause of action, of every kind and description, that Settlement Class Members have or may have against Defendant which is pleaded in the Complaint or which materially relates to the facts or claims pleaded in the Complaint." *Id.* ¶ 32; *see id.* ¶¶ 52–53. Defendant admits no liability or fault. *Id.* ¶¶ 54–55.

The Settlement Agreement provides for a reasonable, cost-effective, and efficient Notice Program. *See id.* ¶¶ 14, 61–67; Toops Decl. ¶ 11. As outlined by the Settlement Agreement and agreed to by the Settlement Administrator, using contact information provided by Defendant, the Settlement Administrator will email the Proposed Summary Notice and Proposed Detailed Notice, *see* Toops Decl. Exs. A-2, A-3, or such other notices as the Court may approve, to all Settlement Class Members with an email address. For all Settlement Class Members whose emails are returned undeliverable or who do not have email addresses, the Settlement Administrator will mail hard copies of the Proposed Detailed Notice (or such other notice as the Court may approve). The Settlement Administrator will also maintain a password-protected website containing at least the Proposed Detailed Notice (or such other notice as the Court may approve), and a toll-free number and an email address Settlement Class Members may use to obtain further information or contact the Settlement Administrator.

Finally, the Settlement Agreement provides that Plaintiffs' Counsel, if appointed Class Counsel, may seek from the Court an award of reasonable attorneys' fees, not to exceed one-third of the Settlement Fund, as well as taxable and nontaxable costs. Settlement Agreement ¶¶ 68–69, 71. Plaintiffs may also seek service awards, not to exceed $3,000 each, from the Settlement Fund. *Id.* ¶¶ 70–71. These requests will be made by separate motion, *see id.* ¶¶ 75, 77, and the Court's rulings will have no effect on the Settlement Agreement or Settlement Class Members' right to

relief under the Settlement Agreement. *See id.* ¶¶ 8, 82.

## LEGAL STANDARD

A court should preliminarily approve a proposed class action settlement and direct notice to all proposed class members if the court finds that it will "likely be able to" approve the settlement under Federal Rule of Civil Procedure 23(e)(2) and certify the proposed class for purposes of judgment on the settlement. Fed. R. Civ. P. 23(e)(1)(B); *see Lawrence v. First Fin. Inv. Fund V, LLC*, 2021 WL 3809083, at *2 (D. Utah Aug. 26, 2021). Preliminary approval should be granted if there is "'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018).

## ARGUMENT

### I.    The Court will likely be able to approve the proposed Settlement Agreement.

A proposed class action settlement should be approved under Rule 23(e)(2) if it is "fair, reasonable, and adequate." In determining whether this requirement is met, Tenth Circuit courts apply two "separate, but related," sets of standards. *Cotte v. CVI SGP Acquisition Tr.*, 2023 WL 1472428, at *2 (D. Utah Feb. 2, 2023); *see Lawrence*, 2021 WL 3809083, at *3 (same). First, Rule 23(e)(2) provides that courts should consider whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the relief provided for the class is adequate"; and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D); *see Cotte*, 2023 WL 1472428, at *2; *Lawrence*, 2021 WL 3809083, at *3. Second, under *Tennille v. Western Union Co.*, 785 F.3d 422 (10th Cir. 2015), a court should also consider whether "the settlement was fairly and honestly negotiated"; "serious legal and factual questions place[] the litigation's outcome in doubt"; "the immediate recovery [is] more valuable than the mere possibility of a more favorable outcome after further litigation"; and

the parties "believe[] the settlement was fair and reasonable." *Id.* at 434; *see Cotte*, 2023 WL 1472428, at *2; *Lawrence*, 2021 WL 3809083, at *3. The Court will likely be able to find that each of these eight factors favors approval here.

**A.    The Rule 23(e)(2) factors favor approval.**

First, Plaintiffs and their Counsel have adequately represented the Settlement Class. This factor looks to "the actual performance of counsel acting on behalf of the class." *Cotte*, 2023 WL 1472428, at *7; *see Lawrence*, 2021 WL 3809083, at *5 (same). This motion is made within six months of the September 30, 2024, layoffs at the Facility. In that short timeframe, Plaintiffs' Counsel have investigated Plaintiffs' and the Settlement Class's claims; filed the Action; propounded and reviewed an initial round of discovery, including an 1,100-page document production; and negotiated a favorable outcome for Plaintiffs and the Settlement Class—all at minimum expense and with great efficiency. Plaintiffs likewise have adequately represented the proposed Settlement Class by reviewing and approving the complaint; providing documents and information to Counsel; communicating with Counsel as necessary; and reviewing and approving the proposed Settlement Agreement.

Second, the Settlement Agreement was negotiated at arm's length. The Parties reached an agreement in principle after an extensive mediation before Ms. Hobbs and an initial round of discovery. Over the course of the following weeks, the parties finalized the language of the Settlement Agreement through the exchange of competing drafts by email. The Parties' Counsel maintained a posture of vigorous advocacy and good-faith adversarial negotiation throughout this process.

Third, the relief provided by the Settlement Agreement to the Settlement Class is adequate. Rule 23(e)(2) instructs that adequacy of relief is to be assessed in light of "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and identification of the parties' agreement "made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iii), 23(e)(3). As for the costs, risks, and delay of further litigation, as discussed under part I.B below with respect to the second and third *Tennille* factors, this factor favors approval. *See Cotte*, 2023 WL 1472428, at *7 (incorporating second and third *Tennille* factors into Fed. R. Civ. P. 23(e)(2)(C)(i) analysis); *Lawrence*, 2021 WL 3809083, at *6 (same). As for the effectiveness of the distribution method, here the Court "scrutinizes the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." *Cotte*, 2023 WL 1472428, at *7 (internal alteration omitted); *Lawrence*, 2021 WL 3809083, at *6 (same). In this case, there is no claims process, and Settlement Class Members need not take any action to receive relief. Settlement Class Members can be (and have been) identified from Defendant's records and the WARN Act notices it sent. Distribution from the Settlement Fund will be made to Settlement Class Members on a *pro rata* basis based on the Members' respective daily wage rates, which can be (and has been) determined for each Settlement Class Member from Defendant's records. This factor favors approval. *See Cotte*, 2023 WL 1472428, at *7–8 (similar facts favor approval under Fed. R. Civ. P. 23(e)(2)(C)(ii)); *Lawrence*, 2021 WL 3809083, at *6–7 (same). As for the terms and timing of fees, because the Settlement Agreement specifies that fees will be paid from the Settlement Fund subject to Court approval, the Court will have an opportunity to assess the reasonableness of Plaintiffs' Counsel's fee request at that time. *See Cotte*, 2023 WL 1472428, at *8; *Lawrence*, 2021 WL 3809083, at *7. As for the Parties' Agreement, it has been identified as required by Rule 23(e)(3) and attached to this motion as Exhibit A-1 to the Toops Declaration. *See Cotte*, 2023 WL 1472428, at *8; *Lawrence*, 2021 WL 3809083, at *7.

Fourth, the Settlement Agreement treats Plaintiffs and Settlement Class Members equitably relative to each other. This factor "seeks to prevent the inequitable treatment of some class members vis-a-vis others" and "looks to whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Cotte*, 2023 WL 1472428, at *8 (internal quotation marks omitted); *see Lawrence*, 2021 WL 3809083, at *7 (same). Here, the Settlement Agreement treats Plaintiffs and Settlement Class Members equitably for several reasons. Each Settlement Class Member is entitled to the same form of relief on a *pro rata* basis from the Settlement Fund, based on their respective wage rates. "This appropriately respects differences among class members claims by providing greater relief to class members who suffered greater harm." *Cotte*, 2023 WL 1472428, at *8 (quoting *Lawrence*, 2021 WL 3809083, at *7). Settlement Class Members will release only those claims "pleaded in the Complaint or which materially relate[] to the facts or claims pleaded in the Complaint," Settlement Agreement ¶ 32, while Plaintiffs will give general releases. *See id.* ¶ 12. And, while the Settlement Agreement provides for service payments to Plaintiffs, the Court will have an opportunity to ensure they are reasonable and legitimate relative to other Settlement Class Members' recoveries upon final approval. This factor favors approval. *See Cotte*, 2023 WL 1472428, at *8 (similar facts favor approval under Fed. R. Civ. P. 23(e)(2)(D)); *see Lawrence*, 2021 WL 3809083, at *7 (same).

## B.     The *Tennille* factors favor approval.

First, the Settlement Agreement was fairly and honestly negotiated. This factor is "substantially the same" as the Rule 23(e)(2)(B) factor discussed under part I.A above, and favors approval for the same reasons. *Cotte*, 2023 WL 1472428, at *5; *see Lawrence*, 2021 WL 3809083, at *6 (similar).

Second, serious legal and factual questions place the Action's outcome in doubt. Most

significantly, there is significant uncertainty around the viability of Defendant's unforeseeable business circumstances defense. "Under 29 U.S.C. § 2102(b)(2)(A), '[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.' The 'employer bears the burden of proof that conditions for the exceptions have been met.' 20 C.F.R. § 639.9. To satisfy these conditions, the defending party must establish that (1) the circumstance was unforeseeable, and (2) the layoffs were caused by that circumstance." *Gross v. Hale-Halsell Co.*, 554 F.3d 870, 875 (10th Cir. 2009). "[T]he test for foreseeability 'focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market.'" *Id.* (quoting 20 C.F.R. § 639.9(b)(2)). This commercial reasonableness test "allows needed flexibility for predictions about ultimate consequences that, though objectively reasonable, proved wrong." *Id.* at 876 (internal alterations omitted).

If this Action were litigated to judgment, Defendant would likely argue that, following its most important client's cancellation of their contract, its subsequent inability to find a replacement for that client was not reasonably foreseeable on August 1, 2024. Defendant's initial document productions reveal some support for this position. Toops Decl. ¶ 9. For example, one Tarrant County official opined that, "[l]ikely, [Defendant] will be able to replace the Tarrant County contract with another contract" in light of strong demand from other counties in the area. *Id.* Defendant's document productions suggest further that Defendant was actively attempting to find replacement clients until the effort appeared untenable, at which point WARN Act notice was given. *Id.* These same facts could further support application of the WARN Act's faltering company exception. *See* 29 U.S.C. § 2102(b)(1). And even if neither defense applies, Defendant could still

succeed in reducing any adjudged liability by showing that its WARN Act violation "was in good faith and that [it] had reasonable grounds for believing" its conduct did not violate the statute. *Id.* § 2104(a)(4). Plaintiffs believe that these defenses of avoidance or mitigation would fail if put to the test, but acknowledge that a business judgment test may give defendants some latitude, and that the outcome of arguments depending on foreseeability, reasonableness, and good faith may be difficult to predict. Toops Decl. ¶ 10. Finally, these issues are uncertain enough that, no matter which side prevailed in this Court, appeals would be likely, either interlocutory under Rule 23(f), postjudgment, or both. *Id.*

Third, the immediate recovery is more valuable than the mere possibility of a more favorable outcome after further litigation. Using Defendant's payroll information, Plaintiffs estimate the maximum recovery for the Settlement Class, representing 29 days' back pay plus benefits, to be less than $900,000. The Settlement Fund here is $500,000, approximately 55 percent of this estimate. While the Settlement Fund includes administration costs and, should the Court award them, fees, costs, and service awards, in light of the legal and factual uncertainties highlighted above, it is doubtful whether an additional 14 to 24 months of litigation, at minimum,[2] could produce an outcome more valuable to the Settlement Class than the compensation offered by the Settlement Agreement within approximately one year of Settlement Class Members' termination from the Facility. The second and third *Tennille* factors, taken together, favor approval.

Fourth, the Parties believe the Settlement Agreement is fair and reasonable. *See* Settlement Agreement ¶¶ P through S.

---

[2] This estimate is based on the Court's deadlines for dispositive motions (May 30, 2026) and expected trial date ("sometime during the 1st quarter of 2027"), assuming no interlocutory or postjudgment appeals. Scheduling Order 3–4 (Dec. 2, 2024), ECF No. 28.

**II.    The Court will likely be able to certify the proposed Settlement Class for purposes of settlement.**

A class should be certified if all of the requirements of Rule 23(a) and at least one requirement of Rule 23(b) are met. *See Cotte*, 2023 WL 1472428, at *3; *Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 372 (D. Utah 2020). Rule 23(a) requires numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a)(1)–(4); *Cotte*, 2023 WL 1472428, at *3; *Lawrence*, 336 F.R.D. at 373. Rule 23(b)(3) additionally requires predominance and superiority. *See Cotte*, 2023 WL 1472428, at *4; *Lawrence*, 336 F.R.D. at 382. The Court will likely be able to find that each of these six requirements is met here.

**A.    Numerosity is satisfied.**

The Settlement Class is too numerous for joinder of all its Members to be practicable. The Settlement Class contains 192 Members. Joinder of nearly 200 plaintiffs would be impracticable, so numerosity is satisfied. *See Cotte*, 2023 WL 1472428, at *3 ("[C]ircuit courts generally allow district courts to certify classes with far fewer members than the approximately 169 present in the classes proposed here. … With 169 members, the proposed classes easily satisfy the numerosity requirement.").

**B.    Commonality is satisfied.**

To satisfy commonality, there must be at least one "common contention" on which Plaintiffs' and Settlement Class Members' claims depend, such that "determination of its truth or falsity will resolve an issue that is central to the validity of [their] claims in one stroke." *Lawrence*, 336 F.R.D. at 374. Plaintiffs' and Settlement Class Members' WARN Act claims share numerous questions of fact and law in common. Whether Defendant was covered by the Act; whether Plaintiffs and Settlement Class Members were protected by the Act; whether Defendant's layoffs at the Facility triggered the Act's requirements; whether Defendant's WARN Act notices were due

on August 1, 2024; whether business circumstances that were not reasonably foreseeable on August 1 caused the layoffs at the Facility; whether the layoffs could have been avoided or postponed by business that Defendant was actively seeking on August 1 and that Defendant reasonably and in good faith believed it would be precluded from obtaining had notice been given on August 1; whether Defendant reasonably and in good faith believed its August 30 notice did not violate the Act—these questions are all central to the validity of Plaintiffs' and Settlement Class Members' claims, and their answers will be the same, and will be proved by the same evidence, for all Plaintiffs and Settlement Class Members. Commonality is satisfied.

### C.    Typicality is satisfied.

Plaintiffs' claims are typical of Settlement Class Members'. "The typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." *Cotte*, 2023 WL 1472428, at *4 (alteration omitted). The requirement is met "so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Lawrence*, 336 F.R.D. at 376. Here, Plaintiffs and Settlement Class Members suffered the same injury (failure to receive the full notice allegedly due under the WARN Act) resulting from the same course of conduct (Defendant's giving allegedly late notice), and seek to recover under the same remedial theory (entitlement to back pay and benefits as authorized by the WARN Act).

### D.    Adequacy is satisfied.

Plaintiffs' and Plaintiffs' Counsel have fairly and adequately protected the interests of the Settlement Class and will continue to do. Adequacy requires "the class representative and their counsel to not have any conflicts of interest with other class members" and "the class representative and their counsel to prosecute the action vigorously on behalf of the class." *Lawrence*, 336 F.R.D. at 377. Neither Plaintiffs nor Plaintiffs' Counsel have any interests contrary

to Settlement Class Members'. Their interests are precisely aligned: to maximize Plaintiffs' and Settlement Class Members' recovery of WARN Act damages flowing from Defendant's layoffs at the Facility. As noted under part I.A, above, Plaintiffs and Plaintiffs' Counsel have prosecuted the Action vigorously and efficiently, leading to a highly favorable proposed outcome with a minimum of expense and delay.

### E.    Predominance is satisfied.

Common questions of fact and law predominate over any individual questions. The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Cotte*, 2023 WL 1472428, at *4; *see Lawrence*, 336 F.R.D. at 382 (same). The common issues identified under part II.B above far outweigh the individual issues. Indeed, the only issue requiring individual proof is the amount of each Plaintiff's and Settlement Class Member's damages. But "[t]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification," *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019), and damages here are readily calculable using a common method. *See Gunderson v. Alta Devices, Inc.*, 2021 WL 4461569, at *3 (N.D. Cal. Sept. 29, 2021) (explaining method for WARN Act damages computations under the "work day" approach endorsed by *Frymire v. Ampex Corp.*, 61 F.3d 757 (10th Cir. 1995)).

### F.    Superiority is satisfied.

Class litigation is the superior vehicle for resolving Plaintiffs' and Settlement Class Members' WARN Act claims. In assessing superiority, Rule 23(b)(3) directs consideration of "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in

14

the particular forum"; and "the likely difficulties in managing a class action." *Cotte*, 2023 WL 1472428, at *5 (quoting Fed. R. Civ. P. 23(b)(3)(A)–(D); *see Lawrence*, 336 F.R.D. at 385 (same). Each of these factors favor a finding of superiority.

First, Settlement Class Members' have little interest in bringing, or incentive to bring, separate individual actions. As discussed under part II.E above, common issues overwhelmingly predominate, "meaning that the typical class member would not meaningfully benefit from pursuing individual action through a lawsuit tailored to their specific facts." *Cotte*, 2023 WL 1472428, at *5. Though there may be "some *potential*" for higher individual recoveries, *id.*, this potential standing alone does not undermine superiority. *See Morrison v. Clear Mgmt. Sols.*, 2019 WL 122905, at *4 (D. Utah Jan. 7, 2019) ("[C]ourts should assess the real-world likelihood that class members would bring their own actions, which implicates another factor the court should consider: the likelihood that proposed class members know they have a claim and whether they are savvy enough to pursue it."). And any Settlement Class Member who chooses "can opt out of this action and file separately." *Cotte*, 2023 WL 1472428, at *5; *see Lawrence*, 336 F.R.D. at 385 (same).

Second, there is no other litigation pending against Defendant in connection with the layoffs at the Facility, under the WARN Act or otherwise.

Third, it is highly desirable to concentrate Plaintiffs' and Settlement Class Members' WARN Act claims in this forum. Defendant is headquartered in Utah, making this District a convenient forum. Plaintiffs' and Settlement Class Members' claims all arise under one statute on one set of facts in connection with one event. Such claims are properly heard in one forum.

Fourth, given the predominance of common issues and the ease of computing damages, management of the Action as a class action presents no special difficulties.

**III.    The Court should appoint Plaintiffs' Counsel as interim Class Counsel.**

When certifying a class, a court must ordinarily appoint class counsel. Fed. R. Civ. P. 23(g)(1). Under Rule 23(g)(3), the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." The Court should appoint Plaintiffs' Counsel as interim Class Counsel pending Plaintiffs' motion for final approval and certification. Rule 23(g)(1) directs the Court to consider "the work counsel has done in identifying or investigating potential claims in the action"; "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; "counsel's knowledge of the applicable law"; and "the resources that counsel will commit to representing the class."

Plaintiffs' Counsel expended time, effort, and money investigating the layoffs at the Facility and Defendant's WARN Act notices before filing this Action. Plaintiffs' Counsel are highly skilled and knowledgeable concerning class action litigation generally and WARN Act litigation specifically. Without receiving any payment to date, Plaintiffs' Counsel have committed and, if necessary, will continue to commit, significant time and money prosecuting this Action on behalf of Plaintiffs and the Settlement Class. The Court should appoint Plaintiffs' Counsel to continue their efforts on behalf of the Settlement Class.

**IV.    The Court should approve the Notice Plan.**

Under Rule 23(e)(1), courts must direct notice to class members "in a reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) requires that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requirements for notice are "coextensive" with these requirements of Rule 23(c)(2). *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016); *see Phillips Petrol. Co. v. Shutts*, 472 U.S.

797, 812 (1985) (Due process requires notice to be "the best practicable, reasonably calculated under all the circumstances to apprise interested parties of pendency of action and afford them opportunity to present their objections." (internal quotation marks omitted)). The notice must further state "clearly and concisely," and "in plain, easily understood language," the nature of the action, the class to certified, the class issues, and certain class rights. Fed. R. Civ. P. 23(c)(2)(B).

The Notice Plan to be administered by the Settlement Administrator under the Settlement Agreement readily satisfies these requirements. Settlement Class Members have been identified from Defendant's records and the WARN Act notices it sent. Given the recency of the layoffs, Defendant's contact data for Settlement Class Members are likely to be reliable and effective means for reaching them. If Settlement Class Members cannot be reached at the email or mailing addresses in Defendant's records, the Settlement Administrator will be required to make reasonable efforts to contact them. *See* Settlement Agreement ¶ 65. The Proposed Summary and Detailed Notices are clear, concise, and written in plain English, and the Proposed Detailed Notice includes all the information required by Rule 23(c)(2)(B). This is reasonable notice reasonably calculated under all the circumstances to inform Settlement Class Members of their rights and to afford them an opportunity to be heard.

Finally, Verita Global, the Settlement Administrator selected by Plaintiffs, with Defendant's consent, to carry out the Notice Plan and Settlement Fund distributions, is known to Plaintiffs' Counsel as an experienced and highly competent settlement administrator. Toops Decl. ¶ 12. The Court should approve the Notice Plan.

## V.    The Court should set a reasonable schedule for exclusion, objection, and final approval.

Plaintiffs propose the following schedule:

| Event | Days after entry of preliminary approval order |
|---|---|
| Deadline for Settlement Class Members to request exclusion from the Settlement Class | 45 |
| Deadline for Settlement Class Members to object to the Settlement Agreement | 60 |
| Final approval hearing | 70 |
| Hearing on Plaintiffs' motion for fees, costs, and service awards | 70 |

## CONCLUSION

For the reasons above, the Court should preliminarily approve the Settlement Agreement; preliminarily certify the Settlement Class; appoint Plaintiffs' Counsel interim Class Counsel; direct that notice be given to Settlement Class Members in accordance with the Settlement Agreement; and set deadlines for exclusion, objection, a final fairness hearing, and a hearing on Plaintiffs' motion for fees, costs, and service awards. A Proposed Preliminary Approval Order is attached to this motion as Exhibit A-4 of the Toops Declaration.

March 25, 2025

Respectfully submitted,

/s/ *Lynn A. Toops*
Lynn A. Toops*
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com

J. Gerard Stranch, IV*
Michael C. Iadevaia*
STRANCH, JENNINGS, &
GARVEY, PLLC
223 Rosa Parks Ave., Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Samuel J. Strauss*
Raina C. Borrelli*
STRAUSS BORRELLI, LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
sam@straussborrelli.com
raina@straussborrelli.com

Jason R. Hull [11202]
Anikka Hoidal [16489]
MARSHALL OLSON & HULL, PC
Ten Exchange Place, Suite 350
Salt Lake City, UT 84111
Telephone: (801) 456-7655
jhull@mohtrial.com
ahoidal@mohtrial.com

* Admitted *pro hac vice*